## AGNES MINARS v. BROWERVILLE STATE BANK AND OTHERS.[1]

June 26, 1936.

No. 30,840.

*Frederick P. Warber* and *Robert H. Petzke,* for appellant.
*Henry F. Prinz* and *W. J. Stephens,* for respondents.

STONE, JUSTICE.

Albert Minars, the original plaintiff, departed this life after the action was commenced. His administratrix was substituted in his stead. The trial was without a jury and the decision for defendants. Plaintiff appeals from the judgment.

The relief wanted by plaintiff is a judgment canceling a note of Albert Minars held by defendant Browerville State Bank (now in liquidation, and to be mentioned from now on as the bank), and awarding her contribution, under the contract hereinafter considered, against the other defendants, Heid, Reichert, Schroeder, Kahlert, and Brever.

During the determinative period they and Minars were stockholders and directors in the bank. The record shows their respective holdings of stock as of March 26, 1926. In August, 1922, Minars purchased from the bank a $1,500 second mortgage and the note secured thereby, of one Peter Lisowski and wife. The mortgage covered farm land owned by the mortgagors and was subject to a

[1]Reported in 268 N. W. 197.

senior mortgage of $2,000. Default occurring, the second mortgage owned by Minars was foreclosed by the bank for his benefit. There was no redemption. Thereafter the first mortgage was foreclosed and the property bought in by the mortgagee in September, 1926. There was no redemption from that foreclosure, and the title passed to the purchaser at the foreclosure sale.

Pending the year allowed for redemption from the foreclosure of the first mortgage and under date of February 11, 1927, the bank as party of the first part, Minars as party of the second part, and his codirectors, the individual defendants, as parties of the third part, entered into the contract upon which this action must stand or fall. It recited generally the history of the two Lisowski mortgages and the then status of the mortgaged property. Its declared purpose was "to protect the interests of these parties in the premises" and "to avoid any misunderstanding to grow out of the situation." The bank was created "the trustee and joint agent for all the parties to this agreement, with full power to act for said parties in carrying out and performing" its covenants. It obligated the bank to convey the Lisowski land "subject to the lien of the prior mortgage" to Minars, who, in turn, undertook to redeem from the foreclosure of that mortgage. But the bank bound itself to finance the transaction, taking Minar's notes for the money advanced. On this point the contract reads that the bank "will accept said notes, it being the intention and purpose of all the parties hereto that second party [Minars] shall advance no money save in so far as his pro rata share may be, if demand for reduction of the loan be made by first party [the bank] upon parties of the second part and of the third part."

The document continues with a stipulation that the Lisowski farm shall be leased for the benefit of Minars and his codirectors, parties of the third part. There was provision for sale at a price to be fixed by the same gentlemen, one having no more voice than the others. "The purpose of all the parties herein," the contract states, was "to carry said property until a sale thereof be possible with a pro rata division of all losses and of all profits, between second parties and third parties."

In the event of a sale, the proceeds were to be "applied to the payment of all notes, obligations and *investments* occurring from the handling of the old Lisowski mortgage and note." (Italics supplied.) The contract proceeds thus: "If the proceeds of said sale be insufficient for this purpose, then Albert Minars" and his codirectors were each obligated to pay to the bank, "his pro rata share of the deficiency and out of all moneys so received, first party shall pay and satisfy all the notes given from time to time by second party for the purposes hereinbefore provided;" all "to the end that party of the second part [Minars] and the parties of the third part [his codirectors], shall assume and pay their pro rata share of any loss, as they shall receive their pro rata share of any profit." There was further provision that "parties of the third part will hold second party [Minars] free from loss herein, save as second party assumes his pro rata share of that loss with third parties."

We cannot escape the conclusion that, although before the contract was made his investment in the Lisowski second mortgage was Minars' own affair, yet, by reason of the terms stated, it was converted thereby into a joint adventure of himself and his codirectors, their share of either profit or loss to be determined on the basis of their relative stock holdings in the bank as of March 26, 1926.

There can be no question of consideration because, although Minars' codirectors had no interest in the matter before, they were given by the contract the right to share in the profits, if any. That promise in their favor furnishes all the consideration needed. Accordingly, we think the decision below was erroneous insofar as it freed defendants, other than the bank, from the obligation to contribute to the losses sustained by Minars.

Cancellation of the $300 note held by the bank against Minars and arising out of the transaction was properly denied. The bank advanced the money and is entitled to collect it from whoever is liable on the note or for the debt it evidences.

The whole contract must be read, each part of it considered in the light of every other, and the whole given effect if that be pos-

sible. In view of its stated purpose to spread the obligation to Minars and his codirectors, not only to the protection of all "notes" and "obligations" but also all "investments" arising out of "the handling of the old Lisowski mortgage and note," plaintiff is entitled to contribution for expenditures made by Minars after the date of the contract, and also for his investment as of its date. To give him less would, by so much, deny effect to important language of the contract.

The answer presents a defense of fraud. The claim is that the defendants other than the bank were induced to sign the agreement by Minars' representations that when he took over the Lisowski paper the bank had guaranteed it. As between plaintiff and the defendants other than the bank, there must be a reversal and a new trial. Our decision is without prejudice to the defense of fraud, if it is pressed. We aim only to construe the contract, leaving to the trial court the matter of determining how much each of the defendants other than the bank shall contribute to plaintiff. Involved in that question is the claimed insolvency of some of the defendants.

The decision below stands insofar as it denies cancellation of the note held by the bank, as to which the judgment must be affirmed. As to the defendants other than the bank, it will be reversed.

So ordered.